## MIDWEST MOTOR COACH COMPANY *v.* ELLIOTT.

[No. 14,252.    Filed October 5, 1932.]

*Gavit, Hall, Smith & Gavit,* for appellant.
*James E. Rocap* and *John J. McShane,* for appellee.

KIME, P. J.—The plaintiff below (appellee) recovered a judgment against the defendant corporation (appellant) for $5,000 damages for personal injuries sustained while riding as a passenger in a motor coach operated by appellant. Appellee alleged negligence in the operation of the coach in which she was riding in that it

was stopped so suddenly that a motor truck following it could not be stopped in time to avoid a collision with said coach, and that by reason thereof she sustained various injuries, the description of which it is not necessary to set out here.

The complaint named as defendants, in addition to appellant, the Great Atlantic and Pacific Tea Co. and one Kandul, the driver of the latter's truck, and the issues were formed by an answer in general denial to said complaint. Appellee dismissed as to the Great Atlantic and Pacific Tea Co. before the cause was submitted to the jury. The jury returned a verdict for appellee and judgment was rendered thereon. The only error assigned and presented is the overruling of the motion for a new trial. Under that assignment appellant challenges the correctness of three instructions given, to-wit: Instructions Nos. 2, 3 and 5, and also challenges the action of the court in refusing to give to the jury appellant's instruction No. 4. In addition it is urged that a new trial should have been granted for the reason that the verdict of the jury is not sustained by sufficient evidence, and is contrary to law.

We have examined instructions Nos. 2 and 3 and find that the giving thereof in this particular case did not constitute reversible error.

Instruction No. 5, complained of by appellant, told the jury that "The undisputed evidence in this case discloses that the defendant company at the time and place of the accident in controversy was what is known in law as a common carrier of passengers. A common carrier of passengers is one who engages in the transportation of persons from place to place for hire and who holds himself out to the public as ready and willing to serve the public in the particular line in which he is engaged. It is fur-

ther undisputed that at the time and place of the accident in controversy the plaintiff had paid the usual fare for transportation over the defendant's bus line from the City of Gary, Indiana, to Chicago, Illinois, and was riding in one of the defendant's buses as a passenger. Under such circumstances the defendant company owed to the plaintiff the duty of exercising a *high degree of care* to transport her to her destination in safety. And if you find from a fair preponderance of the evidence in this case that the defendant failed to discharge that duty towards the plaintiff in any of the respects alleged in her complaint and as the proximate result thereof the plaintiff received the injuries she complains of, then under such circumstances the plaintiff would be entitled to recover." (Our italics.)

The objection addressed to this instruction by appellant is that it sets an improper standard of care, and we think the instruction complained of is justly subject to that criticism for the reason that we have but a single standard of care in this state and that is "due care," "ordinary care," and "reasonable care," which terms are regarded by our courts as having the same significance. *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 121 N. E. 655. It is said in the Union Traction case, *supra*, that, "The use of such terms as 'slight care,' 'highest degree of care,' 'great care,' or other like expressions in instructions as indicating the quantum of care the law exacts under special conditions and circumstances, is misleading; and when so used they constitute an invasion of the province of the jury, whose function it is to determine what amount of care is required to measure up to the duty imposed by law under the facts of the particular case. The law imposes but one duty in such cases, and that is the duty to use due care; and the law recognizes only one standard by which the quantum of care can be measured,

and that is the care which a person of ordinary prudence would exercise under like circumstances."

Appellee, in answer to appellant's objection, admits the language in the instruction is not to be commended, but contends that the verdict is right under the evidence, and that, even if there were error in the giving of this instruction, it would not justify a reversal under such circumstances. In answer to this we quote further from the Union Traction case, *supra:* "If the conditions and circumstances disclosed by the evidence were of such a character as to show negligence on the part of defendant so clearly and conclusively as to justify this court in saying that the verdict could not have been different in the absence of the erroneous instruction, then the court might decline to reverse the judgment on the ground that it was clearly right, and that the error was not prejudicial." In the instant case we find an extreme conflict in the testimony on some of the material points in evidence, and in the light of such a conflict it would be difficult for this court to say that the verdict could not have been different had the erroneous instruction not been given. We are not unmindful of the well established rule of law that an appellate court will consider only such evidence as tends to support the verdict, but this rule does not apply to the extent that an affirmance must be made in the face of a legal error, where such error appears to have been prejudicial. We must assume that the erroneous instruction influenced the result, unless it appears from the evidence or some other part of the record that the verdict could not have been different had a proper instruction been given. *City of Decatur* v. *Eady* (1916), 186 Ind. 205, 115 N. E. 577, L. R. A. 1917E, 242. As was said in *Lake Erie, etc., R. Co.* v. *Ford* (1906), 167 Ind. 205, 78 N. E. 969: "The viciousness of the instruction in question lies in its tendency to

lead the jury to infer that the legal standard of ordinary care was raised by the circumstances recited, thus making possible the inference that a great but undefined extent of care was required, whereas all that the law exacted was the ordinary care which the situation demanded, or such care as is to be assumed that an ordinarily prudent man would exercise in the circumstances, were the risk his own." Even though the evidence preponderates in favor of the verdict, it must be set aside because of the giving of the erroneous instruction. *Williams* v. *Andrew* (1900), 185 Ill. 98, 56 N. E. 1041.

As to appellant's assignment that "the verdict of the jury is not sustained by sufficient evidence," wherein it is contended that no negligence was shown on the part of appellant, we have but to say that we have made a careful examination of the evidence on this point and have concluded that there was sufficient evidence to sustain the finding of the jury on the question of negligence. This statement may, at first blush, seem inconsistent with some of the statements made in the preceding paragraph, but we reiterate the fact that there was a serious conflict in evidence on some of the material points, thereby making it possible (but not necessarily probable) that the verdict might have been different had instruction No. 5 correctly stated the care required.

A careful examination of the instructions given discloses that appellant's tendered instruction No. 4, which was refused, and of which refusal appellant complains, was fully covered by the instruction given, and was, therefore, properly refused. *Wabash Ry. Co.* v. *Bixby* (1928), 88 Ind. App. 52, 163 N. E. 231; *Pillsbury Flour Mills Co.* v. *Citizens National Bank of Peru, Indiana et al.* (1929), 91 Ind. App. 211, 169 N. E. 352.

This cause is reversed with instructions that appellant's motion for a new trial be granted.